# BLYSTONE *v.* PENNSYLVANIA

No. 88–6222.   Argued October 10, 1989—Decided February 28, 1990

REHNQUIST, C. J., delivered the opinion of the Court, in which WHITE, O'CONNOR, SCALIA, and KENNEDY, JJ., joined. BRENNAN, J., filed a dissenting opinion, in which MARSHALL, J., joined, and in all but Part IV of which BLACKMUN and STEVENS, JJ., joined, *post*, p. 309.

*Paul R. Gettleman* argued the cause for petitioner. With him on the briefs was *Stefan Presser*.

*Ernest D. Preate, Jr.*, Attorney General of Pennsylvania, argued the cause for respondent. With him on the brief were *Ronald Eisenberg, Hugh J. Burns, Jr., Ewing D. Newcomer*, and *Gaele McLaughlin Barthold*, Special Deputy Attorneys General, and *Robert A. Graci*, Chief Deputy Attorney General.*

---

*A brief of *amici curiae* urging affirmance was filed for the State of California et al. by *John K. Van de Kamp*, Attorney General of California, *Richard B. Iglehart*, Chief Assistant Attorney General, *Arnold O. Overoye*, Senior Assistant Attorney General, and *Edmund D. McMurray, Dane R. Gillette*, and *Ward A. Campbell*, Deputy Attorneys General, *Robert K. Corbin*, Attorney General of Arizona, *John J. Kelly*, Chief State's Attorney of Connecticut, *James T. Jones*, Attorney General of Idaho, *Neil F. Hartigan*, Attorney General of Illinois, *Linley E. Pearson*, Attorney General of Indiana, *Marc Racicot*, Attorney General of Montana, *Brian McKay*, Attorney General of Nevada, *John P. Arnold*, Attorney General of New Hampshire, *Lacy H. Thornburg*, Attorney General of North Carolina, *T. Travis Medlock*, Attorney General of South Carolina, *Michael Burson*, Attorney General of Tennessee, *R. Paul Van Dam*, Attorney General of Utah, and *Joseph P. Meyer*, Attorney General of Wyoming.

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

A Pennsylvania jury sentenced petitioner Scott Wayne Blystone to death after finding him guilty of robbing and murdering a hitchhiker who was unlucky enough to have accepted a ride in his car. Petitioner challenges his sentence on the ground that the State's death penalty statute is unconstitutional because it requires the jury to impose a sentence of death if, as in this case, it finds at least one aggravating circumstance and no mitigating circumstances. We hold that the Pennsylvania death penalty statute, and petitioner's sentence under it, comport with our decisions interpreting the Eighth Amendment to the United States Constitution.

On a September night in 1983, Dalton Charles Smithburger, Jr., an individual characterized at trial as possessing a learning disability, was attempting to hitch a ride along a Pennsylvania road. Petitioner, who was driving an auto carrying his girlfriend and another couple, observed Smithburger and announced: "I am going to pick this guy up and rob him, okay . . . ?" His friends acquiesced in the idea. Once petitioner had Smithburger in the car, he asked him if he had any money for gas. Smithburger responded that he only had a few dollars and began searching a pocket for money. Dissatisfied, petitioner pulled out a revolver, held it to Smithburger's head, and demanded that Smithburger close his eyes and put his hands on the dash. Petitioner then pulled off the road and ordered Smithburger out of the car and into a nearby field. After searching his victim at gunpoint and recovering $13, petitioner told Smithburger to lie face down in the field. He later said to a friend: "'He [Smithburger] was so scared. When I was searching him, his body was shaking.'" 519 Pa. 450, 490, 549 A. 2d 81, 100 (1988).

Petitioner then ordered his victim not to move, and crept back to the car to tell his companions he was going to kill Smithburger. Petitioner returned to the field where, para-

lyzed by fright, Smithburger remained with his face to the ground. Petitioner asked his victim what kind of car he had been in. Smithburger responded with the wrong answer— he accurately described the car as green with a wrecked back end. Petitioner then said "'goodbye'" and discharged six bullets into the back of Smithburger's head. During a subsequent conversation with a friend, petitioner was recorded on a concealed device "bragging in vivid and grisly detail of the killing of that unlucky lad." *Id.*, at 457, 549 A. 2d, at 84. In response to a query during the conversation as to whether petitioner dreamed about, or felt anything from, the murder, petitioner stated: "'We laugh about it. . . . [I]t gives you a realization that you can do it. . . . You can walk and blow somebody's brains out and you know that you can get away with it. It gives you a feeling of power, self-confidence . . . .'" *Id.*, at 489–490, 549 A. 2d, at 100.

Petitioner was charged with and convicted of first-degree murder, robbery, criminal conspiracy to commit homicide, and criminal conspiracy to commit robbery. The same jury that convicted petitioner found as an aggravating circumstance that petitioner "committed a killing while in the perpetration of a felony." 42 Pa. Cons. Stat. § 9711(d)(6) (1988). The jury found that no mitigating circumstances existed, and accordingly sentenced petitioner to death pursuant to the Pennsylvania death penalty statute which provides that "[t]he verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance . . . and no mitigating circumstance or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances." § 9711(c)(1)(iv). On direct appeal to the Supreme Court of Pennsylvania, petitioner argued that the death penalty statute was unconstitutional because it mandated a sentence of death based on the outcome of the weighing process. The court summarily rejected this argument, see 519 Pa., at 473, 549 A. 2d, at 92, noting that it had been expressly refuted in its decision in *Commonwealth*

v. *Peterkin*, 511 Pa. 299, 326–328, 513 A. 2d 373, 387–388 (1986), cert. denied, 479 U. S. 1070 (1987). In *Peterkin*, the court reasoned that the statute properly accommodated the concerns of *Furman* v. *Georgia*, 408 U. S. 238 (1972), that jury discretion be channeled to avoid arbitrary and capricious capital sentencing, and *Lockett* v. *Ohio*, 438 U. S. 586 (1978), that a capital jury be allowed to consider all relevant mitigating evidence. 511 Pa., at 326–328, 513 A. 2d, at 387–388. We granted certiorari, 489 U. S. 1096 (1989), to decide whether the mandatory aspect of the Pennsylvania death penalty statute renders the penalty imposed upon petitioner unconstitutional because it improperly limited the discretion of the jury in deciding the appropriate penalty for his crime. We now affirm.

The constitutionality of a death penalty statute having some "mandatory" aspects is not a novel issue for this Court. In *Jurek* v. *Texas*, 428 U. S. 262 (1976), we upheld a statute requiring the imposition of a death sentence if the jury made certain findings against the defendant beyond the initial conviction for murder. See *id.*, at 278 (WHITE, J., concurring in judgment). A majority of the Court believed that the Texas sentencing scheme at issue in *Jurek* cured the constitutional defect identified in *Furman*—namely, that unguided juries were imposing the death penalty in an inconsistent and random manner on defendants. See *Furman, supra*, at 309–310 (Stewart, J., concurring). Thus, by suitably directing and limiting a sentencing jury's discretion "so as to minimize the risk of wholly arbitrary and capricious action," *Gregg* v. *Georgia*, 428 U. S. 153, 189 (1976) (opinion of Stewart, Powell, and STEVENS, JJ.), the Texas death penalty scheme was found to pass constitutional muster. See *Jurek*, 428 U. S., at 276.[1]

---

[1] Only three Members of the Court expressly relied on the mandatory nature of the Texas sentencing scheme as one reason why it passed muster under *Furman*. See *Jurek*, 428 U. S., at 278 (WHITE, J., joined by Burger, C. J. and REHNQUIST, J., concurring in judgment). While Justices

It was also thought significant that the Texas sentencing scheme allowed the jury to consider relevant mitigating evidence. "A jury must be allowed to consider on the basis of all relevant evidence not only why a death sentence should be imposed, but also why it should not be imposed." *Id.*, at 271 (opinion of Stewart, Powell, and STEVENS, JJ.). On the same day that *Jurek* was decided, the Court struck down two capital sentencing schemes largely because they *automatically* imposed a sentence of death upon an individual convicted of certain murders, without allowing "particularized consideration of relevant aspects of the character and record of each convicted defendant before the imposition upon him of a sentence of death." *Woodson* v. *North Carolina*, 428 U. S. 280, 303 (1976) (plurality opinion); *Roberts* v. *Louisiana*, 428 U. S. 325, 333–334 (1976) (plurality opinion); see also *Lockett* v. *Ohio*, 438 U. S., at 604 (plurality opinion) ("The mandatory death penalty statute in *Woodson* was held invalid because it permitted *no* consideration of relevant facets of the character and record of the individual offender or the circumstances of the particular offense") (emphasis in original; quotation omitted).

In *Lockett*, the Court provided further guidance on the nature of "relevant" mitigating circumstances, concluding that a sentencer must be allowed to consider, *"as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Ibid.* (emphasis in original; footnote omitted). Last Term, we elaborated on this principle, holding that "the jury must be able to consider and give effect to any mitigating evidence relevant to a defendant's background and character or the circum-

---

Stewart, Powell, and STEVENS did not explicitly rely on the mandatory character of that scheme in upholding it, those Justices certainly did not believe the mandatory language posed any constitutional difficulties. See generally *id.*, at 268–277.

stances of the crime." *Penry* v. *Lynaugh*, 492 U. S. 302, 328 (1989).

We think that the Pennsylvania death penalty statute satisfies the requirement that a capital sentencing jury be allowed to consider and give effect to all relevant mitigating evidence. Section 9711 does not limit the types of mitigating evidence which may be considered, and subsection (e) provides a jury with a nonexclusive list of mitigating factors which may be taken into account—including a "catchall" category providing for the consideration of "[a]ny other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense." See 42 Pa. Cons. Stat. § 9711(e)(8) (1988).[2] Nor is the statute impermissibly "mandatory" as that term was understood in *Woodson* or *Roberts*. Death is not automatically imposed upon conviction for certain types of murder. It is imposed only after a determination that the aggravating circumstances outweigh the mitigating circumstances present in the particular crime committed by the particular defendant, or that there are no such mitigating circumstances. This is sufficient under *Lockett* and *Penry*.[3]

---

[2] The Pennsylvania Supreme Court has construed § 9711(e) to allow consideration of *any* relevant mitigating evidence, even that falling outside the catchall provision of subsection (e)(8). *Commonwealth* v. *Holcomb*, 508 Pa. 425, 470, n. 26, 498 A. 2d 833, 856, n. 26 (1985) (plurality opinion), cert. denied, 475 U. S. 1150 (1986); see also *Commonwealth* v. *Fahy*, 512 Pa. 298, 315–316, 516 A. 2d 689, 698 (1986).

[3] The dissent states that our discussion of the facial validity of the Pennsylvania statute under *Penry* and *Lockett* is irrelevant because "[w]e did not grant certiorari to determine if the statute allows sufficient consideration of mitigating circumstances as required by *Lockett*. We granted certiorari to consider whether a State may mandate the death penalty when the jury finds no mitigating circumstances." *Post*, at 316, n. 5. This statement is in error. The question presented reads as follows: "Whether the mandatory nature of the Pennsylvania death penalty statute renders said statute facially unconstitutional or renders the death penalty imposed upon petitioner unconstitutional because it improperly limits the full discretion the sentencer must have in deciding the appropriate penalty for a

Petitioner challenges the statute as it was applied in his particular case. This challenge essentially consists of a claim that his sentencing proceeding was rendered "unreliable" by the mandatory aspect of § 9711 for two reasons. See *Woodson*, *supra*, at 305 (there is a "need for reliability in the determination that death is the appropriate punishment in a specific case") (plurality opinion). First, petitioner asserts that the mandatory feature of his jury instructions—derived, of course, from the statute—precluded the jury from evaluating the weight of the particular aggravating circumstance found in his case. Second, petitioner contends that the mandatory feature of the sentencing instructions unconstitutionally limited the jury's consideration of unenumerated mitigating circumstances. We address these arguments in turn.

At sentencing, petitioner's jury found one aggravating circumstance present in this case—that petitioner committed a killing while in the perpetration of a robbery. No mitigating circumstances were found.[4] Petitioner contends that the mandatory imposition of death in this situation violates the Eighth Amendment requirement of individualized sentencing since the jury was precluded from considering whether the severity of his aggravating circumstance warranted the death sentence. We reject this argument. The presence of aggravating circumstances serves the purpose of limiting the class of death-eligible defendants, and the Eighth Amend-

particular defendant." Pet. for Cert. 2. The jury's ability to consider mitigating evidence is indeed germane to this question.

[4] After receiving repeated warnings from the trial judge, and contrary advice from his counsel, petitioner decided not to present any proof of mitigating evidence during his sentencing proceedings. Asked to explain this decision by the trial judge, petitioner responded: "I don't want anybody else brought into it." App. 8. Nonetheless, the jury was specifically instructed that it should consider any mitigating circumstances which petitioner had proved by a preponderance of the evidence, and in making this determination the jury should consider any mitigating evidence presented at trial, including that presented by either side during the guilt phase of the proceedings. *Id.*, at 13.

ment does not require that these aggravating circumstances be further refined or weighed by a jury.  See *Lowenfield* v. *Phelps*, 484 U. S. 231, 244 (1988) ("The use of 'aggravating circumstances' is not an end in itself, but a means of genuinely narrowing the class of death-eligible persons and thereby channeling the jury's discretion").  The requirement of individualized sentencing in capital cases is satisfied by allowing the jury to consider all relevant mitigating evidence.[5] In petitioner's case the jury was specifically instructed to consider, as mitigating evidence, any "matter concerning the character or record of the defendant, or the circumstances of

---

[5] Petitioner's reliance on *Sumner* v. *Shuman*, 483 U. S. 66 (1987), is misplaced.  There we held that a statute mandating the death penalty for a prison inmate convicted of murder while serving a life sentence without possibility of parole violated the Eighth and Fourteenth Amendments. Although noting that "[p]ast convictions of other criminal offenses can be considered as a valid aggravating factor in determining whether a defendant deserves to be sentenced to death for a later murder," *id.*, at 81, we recognized that "the inferences to be drawn concerning an inmate's character and moral culpability may vary depending on the nature of the past offense."  The sentencing scheme involved in that case, however, did not provide for the consideration of any mitigating circumstances.  *Id.*, at 67–68, n. 1.

The dissent attempts to undermine our reliance on *Jurek* v. *Texas*, 428 U. S. 262 (1976), by arguing that the requirement of individualized sentencing was fulfilled under the Texas death penalty statute in a way not allowed by the Pennsylvania scheme through the jury's consideration of special findings required to be made before death could be imposed.  *Post*, at 320–323.  The dissent ignores the fact that the three-Justice opinion in *Jurek* concluded that the Texas statute fulfilled the requirement of individualized sentencing precisely because one of the special findings had been construed by Texas courts to permit the consideration of mitigating evidence.  *Jurek*, *supra*, at 272 (opinion of Stewart, Powell and STEVENS, JJ.) ("Thus, the constitutionality of the Texas procedures turns on whether the enumerated questions allow consideration of particularized mitigating factors").  Nowhere in that opinion was it implied that the mandatory feature of the Texas statute was constitutional only because a jury could still weigh other factors under a particular construction of the special findings when it found no mitigating circumstances.

his offense." App. 12–13. This was sufficient to satisfy the dictates of the Eighth Amendment.

Next, petitioner maintains that the mandatory aspect of his sentencing instructions foreclosed the jury's consideration of certain mitigating circumstances. The trial judge gave the jury examples of mitigating circumstances that it was entitled to consider, essentially the list of factors contained in § 9711(e). Among these, the judge stated that the jury was allowed to consider whether petitioner was affected by an "extreme" mental or emotional disturbance, whether petitioner was "substantially" impaired from appreciating his conduct, or whether petitioner acted under "extreme" duress. Petitioner argues that these instructions impermissibly precluded the jury's consideration of lesser degrees of disturbance, impairment, or duress. This claim bears scant relation to the mandatory aspect of Pennsylvania's statute, but in any event we reject it. The judge at petitioner's trial made clear to the jury that these were merely items it could consider, and that it was also entitled to consider "any other mitigating matter concerning the character or record of the defendant, or the circumstances of his offense." App. 12–13. This instruction fully complied with the requirements of *Lockett* and *Penry*.

Three Terms ago, in *McCleskey* v. *Kemp*, 481 U. S. 279 (1987), we summarized the teachings of the Court's death penalty jurisprudence:

> "In sum, our decisions since *Furman* have identified a constitutionally permissible range of discretion in imposing the death penalty. First, there is a required threshold below which the death penalty cannot be imposed. In this context, the State must establish rational criteria that narrow the decisionmaker's judgment as to whether the circumstances of a particular defendant's case meet the threshold. Moreover, a societal consensus that the death penalty is disproportionate to a particular offense

prevents a State from imposing the death penalty for that offense. Second, States cannot limit the sentencer's consideration of any relevant circumstance that could cause it to decline to impose the penalty. In this respect, the State cannot channel the sentencer's discretion, but must allow it to consider any relevant information offered by the defendant." *Id.*, at 305–306.

We think petitioner's sentence under the Pennsylvania statute satisfied these requirements. The fact that other States have enacted different forms of death penalty statutes which also satisfy constitutional requirements casts no doubt on Pennsylvania's choice. Within the constitutional limits defined by our cases, the States enjoy their traditional latitude to prescribe the method by which those who commit murder shall be punished.

*Affirmed.*

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, and with whom JUSTICE BLACKMUN and JUSTICE STEVENS join except as to Part IV, dissenting.

The hallmark of our Eighth Amendment jurisprudence is that because the "penalty of death is qualitatively different from a sentence of imprisonment," *Woodson* v. *North Carolina*, 428 U. S. 280, 305 (1976) (plurality opinion), capital punishment may not be imposed unless the sentencer makes an individualized determination that death is the appropriate sentence for a particular defendant. This Court has repeatedly invoked this principle to invalidate mandatory death penalty statutes for even the most egregious crimes. See *Sumner* v. *Shuman*, 483 U. S. 66, 85 (1987) (murder committed by inmate serving life sentence); *Roberts* v. *Louisiana*, 431 U. S. 633, 637 (1977) (murder of police officer); *Roberts* v. *Louisiana*, 428 U. S. 325, 333 (1976) (plurality opinion) (all first-degree murders); *Woodson, supra* (same). Today, for the first time, the Court upholds a statute containing a

mandatory provision that gives the legislature rather than the jury the ultimate decision whether the death penalty is appropriate in a particular set of circumstances. Such a statute deprives the defendant of the type of individualized sentencing hearing required by the Eighth Amendment. I respectfully dissent.

I

After a defendant is convicted of first-degree murder in Pennsylvania, the court must hold a separate sentencing hearing at which the jury determines whether the death penalty is warranted. 42 Pa. Cons. Stat. § 9711(a) (1988). The jury considers the aggravating circumstances that are listed in the statute.[1] In addition, the jury considers specific enu-

[1] The aggravating circumstances are as follows:

"(1) The victim was a fireman, peace officer, or other public servant concerned in official detention . . . , who was killed in the performance of his duties.

"(2) The defendant paid or was paid by another person or had contracted to pay or be paid by another person or had conspired to pay or be paid by another person for the killing of the victim.

"(3) The victim was being held by the defendant for ransom or reward, or was held as a shield or hostage.

"(4) The death of the victim occurred while the defendant was engaged in the hijacking of an aircraft.

"(5) The victim was a prosecution witness to a murder or other felony committed by the defendant and was killed for the purpose of preventing his testimony against the defendant in any grand jury or criminal proceeding involving such offenses.

"(6) The defendant committed the killing while in the perpetration of a felony.

"(7) In the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense.

"(8) The offense was committed by means of torture.

"(9) The defendant has a significant history of felony convictions involving the use or threat of violence to the person.

"(10) The defendant has been convicted of another Federal or State offense committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was imposable or the de-

merated mitigating circumstances and "any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense." § 9711(e). The State must prove the existence of aggravating circumstances beyond a reasonable doubt, and the defendant must prove the existence of mitigating circumstances by a preponderance of the evidence. § 9711(c)(1)(iii). The statute provides that "[t]he verdict *must* be a sentence of death if the jury unanimously finds at least one aggravating circumstance specified in subsection (d) and no mitigating circumstance." § 9711(c)(1)(iv) (emphasis added).[2] The statute therefore deprives the jury of any sentencing discretion once it has found one aggravating circumstance but no mitigating circumstances; the jury may not consider whether the aggravating circumstance, by itself, justifies the imposition of the most extreme sanction available to society.

This case illustrates the effect of the mandatory provision of the statute. The jury found as an aggravating circumstance that petitioner had committed murder during a $13 robbery. § 9711(d)(6). But petitioner presented no evidence of mitigating circumstances and the jury found none. App. 19. The jury was told that in such a situation, it was not allowed to make the ultimate decision whether the death penalty was justified. The judge instructed the jury that once it found "an aggravating circumstance and no mitigating

---

fendant was undergoing a sentence of life imprisonment for any reason at the time of the commission of the offense.

"(11) The defendant has been convicted of another murder, committed either before or at the time of the offense at issue.

"(12) The defendant has been convicted of voluntary manslaughter . . . committed either before or at the time of the offense at issue." 42 Pa. Cons. Stat. § 9711(d) (1988).

[2] The statute also provides that "[t]he verdict must be a sentence of death . . . if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances." § 9711(c)(1)(iv). Since the jury found no mitigating circumstances in this case, petitioner challenges the constitutionality of only the first part of the provision.

circumstances, *it is your duty to return a verdict of death.*"
*Id.*, at 11 (emphasis added); see *id.*, at 14 ("Your verdict
*must* be a sentence of death if you unanimously find at least
one aggravating circumstance and no mitigating circum-
stances") (emphasis added).[3]

The prosecutor emphasized that each juror had sworn an
oath to follow the law and that, in this case, the law man-
dated the death penalty:

> "Under the law, if you have an aggravating circumstance
> and no mitigating circumstances, it is your *duty* to im-
> pose the death penalty . . . so each of you were asked
> last week when we questioned you whether or not,
> under the appropriate circumstances, you could impose
> the death penalty and each of you replied that you could.
> Each of you replied that you would follow the law, and
> each of you replied that whatever your duty was, you
> would follow it." *Id.*, at 23 (emphasis added).

---

[3] Nor did the instructions on mitigating evidence indicate that the jury
was free to choose a life sentence even if it did not find any mitigating cir-
cumstances. The trial judge made no attempt to define the concept of
mitigation for the jury. When the jury pressed for a definition of mitiga-
tion, the judge stated that "[t]he Legislature has determined what consti-
tutes mitigating circumstances" and proceeded to list the statutory miti-
gating factors. App. 16. When pressed further for a definition of the
last mitigating circumstance—"any other evidence of mitigation concerning
the character of the defendant and the circumstances of his offense"—the
judge said, "[t]his is pretty broad and allows you a great latitude in deter-
mining what you might consider to be a mitigating circumstance." *Id.*, at
17. The trial judge did, however, emphasize that the defendant was re-
quired to prove mitigating factors by a preponderance of the evidence.
See *id.*, at 12 ("[I]f you find that the evidence of mitigation is greater than
the other way by a preponderance of the evidence, which means simply to
exceed in weight, then you would make a finding of mitigat[ion]"). How-
ever, because petitioner had not presented any affirmative evidence of
mitigation, the judge stressed that the evidence "should be . . . something
that you can draw from the record of this case as to his character or the
record of the defendant or the circumstances of his offense." *Id.*, at 17.

Indeed, the prosecutor argued that because the jury had already found an aggravating circumstance by finding petitioner guilty of robbery, the statute mandated that the death penalty be imposed unless the defendant proved at least one mitigating circumstance.

> "Our law doesn't permit the jury to impose the death penalty or impose a life sentence as they feel it should be, but rather there are certain specific times when the death penalty should be imposed and there are certain specific times when it should not be imposed. The court touched upon it and told you of aggravating and mitigating circumstances. The aggravating circumstance in this case is that this defendant . . . committed a killing in the perpetration of a felony. The felony in this case was the robbery. You have already made a determination by your verdict that this defendant was guilty of that robbery, so you have the aggravating circumstance. It is already proven and you already believed it. . . . You must determine from the evidence presented in this Courtroom whether or not there are any mitigating circumstances; if not, you must follow the law and impose the death penalty." *Id.*, at 22–24.

Hence, both the judge and the prosecutor emphasized that if the jury failed to find any mitigating factors, the legislature had determined that death was the appropriate sentence.

## II

The majority does not dispute this description of the Pennsylvania statute or its application in this case. Rather, the majority holds that "the Eighth Amendment does not require that . . . aggravating circumstances be further refined or weighed by a jury. . . . The requirement of individualized sentencing in capital cases is satisfied by allowing the jury to consider all relevant mitigating evidence." *Ante*, at 306–307. That the majority cites no case to support this extraordinary conclusion is no surprise; careful analysis of our cases

compels the conclusion that a jury must be able to consider the weight of *both* the aggravating *and* mitigating circumstances when choosing whether to impose a death sentence.

## A

The Pennsylvania Legislature's delineation of 12 aggravating circumstances represents an effort to comply with our command that "[b]ecause of the uniqueness of the death penalty, . . . it [may] not be imposed under sentencing procedures that creat[e] a substantial risk that it [will] be inflicted in an arbitrary and capricious manner." *Gregg* v. *Georgia*, 428 U. S. 153, 188 (1976) (joint opinion of Stewart, Powell, and STEVENS, JJ.) (citing *Furman* v. *Georgia*, 408 U. S. 238 (1972)). In *Furman*, the Court held that vesting the sentencer with unbridled discretion to determine whether or not to impose the death penalty resulted in a system in which there was no objective way to distinguish between defendants who received the death penalty and those who did not. See *id.*, at 309–310 (Stewart, J., concurring) (death sentences at issue were "cruel and unusual in the same way that being struck by lightning is cruel and unusual. . . . [T]he petitioners are among a capriciously selected random handful upon whom the sentence of death has in fact been imposed"); *id.*, at 313 (WHITE, J., concurring) ("[T]here is no meaningful basis for distinguishing the few cases in which [death] is imposed from the many cases in which it is not"). In *Gregg, supra,* however, the Court held that a State may impose the death penalty if the State adequately "guides" the sentencer's discretion in determining the appropriate punishment. 428 U. S., at 195 (joint opinion of Stewart, Powell, and STEVENS, JJ.); *id.*, at 222 (WHITE, J., concurring in judgment). Thus, the Court has held that a State must "genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Zant* v. *Stephens*, 462 U. S. 862, 877 (1983). The legisla-

ture may narrow the death-eligible class at the guilt stage by defining the capital murder statute narrowly, see *Lowenfield* v. *Phelps*, 484 U. S. 231, 244 (1988); *Jurek* v. *Texas*, 428 U. S. 262, 270 (1976) (joint opinion of Stewart, Powell, and STEVENS, JJ.), or at the sentencing stage by requiring the sentencer to find "aggravating factors" that objectively distinguish the murder from all other murders. *Godfrey* v. *Georgia*, 446 U. S. 420, 428–429 (1980) (plurality opinion).

At the same time, however, the Court has recognized that the Eighth Amendment imposes a limit on a State's ability to "guide" the sentencer's discretion. On the same day that the Court upheld three death penalty statutes that "guided" the jury's discretion in imposing this sentence,[4] the Court invalidated two mandatory death penalty statutes. *Woodson* v. *North Carolina*, 428 U. S. 280 (1976); *Roberts* v. *Louisiana*, 428 U. S. 325 (1976). The *Woodson* plurality rejected the argument that *Furman* required removal of *all* discretion from the sentencer, holding that any consistency obtained by a mandatory statute would be arbitrary because the consistency would not take into account the individual circumstances of the defendant and the crime. *Woodson*, *supra*, at 304. See also *Eddings* v. *Oklahoma*, 455 U. S. 104, 112 (1982) ("By holding that the sentencer in capital cases must be permitted to consider any relevant mitigating factor, the rule . . . recognizes that a consistency produced by ignoring individual differences is a false consistency"). A mandatory death penalty statute treats "all persons convicted of a designated offense not as uniquely individual human beings, but as members of a faceless, undifferentiated mass to be subjected to the blind infliction of the penalty of death." *Ibid.* Thus, the Court held that the "fundamental respect for humanity underlying the Eighth Amendment requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally

---

[4] *Gregg* v. *Georgia*, 428 U. S. 153 (1976); *Proffitt* v. *Florida*, 428 U. S. 242 (1976); *Jurek* v. *Texas*, 428 U. S. 262 (1976).

indispensable part of the process of inflicting the penalty of death." *Ibid.* (citation omitted). See also *Sumner,* 483 U. S., at 85; *Roberts,* 431 U. S., at 637.

*Woodson* and its progeny are distinguishable from this case because the Pennsylvania statute allows the jury to consider mitigating circumstances. But once a Pennsylvania jury finds that no mitigating circumstances are proved by a preponderance of the evidence, it is required to impose the death penalty. The mandatory provision of the Pennsylvania statute may be effective in a smaller set of cases than the North Carolina statute at issue in *Woodson.* Nevertheless, the effect of the mandatory provision in both statutes is the same: it substitutes a legislative judgment about the severity of a crime for a jury's determination that the death penalty is appropriate for the individual.[5]

## B

The majority is unconcerned that in this category of cases the mandatory provision deprives the defendant of an individualized sentencing determination. The nature of the individualized determination required by *Woodson* is derived from this Court's recognition that the decision to impose the death penalty must reflect a reasoned moral judgment about the defendant's actions and character in light of all the circumstances of the offense and the defendant's background. See, *e. g., Penry* v. *Lynaugh,* 492 U. S. 302, 319 (1989); *California* v. *Brown,* 479 U. S. 538, 545 (1987) (O'CONNOR, J., concurring). Just as a jury must be free to consider and weigh mitigating circumstances as independently relevant to

---

[5] For this reason, the Court's discussion of the facial validity of the statute under *Penry* v. *Lynaugh,* 492 U. S. 302 (1989), and *Lockett* v. *Ohio,* 438 U. S. 586 (1978), is irrelevant. *Ante,* at 305. We did not grant certiorari to determine if the statute allows sufficient consideration of mitigating circumstances as required by *Lockett.* We granted certiorari to consider whether a State may mandate the death penalty when the jury finds no mitigating circumstances. The jury's ability to consider mitigating evidence is not germane to the question presented.

the defendant's moral culpability, see *Penry, supra,* at 319, a jury must also be able to consider and weigh the severity of each aggravating circumstance. The weight of an aggravating circumstance depends on the seriousness of the crime— a significant aspect of the defendant's moral culpability. Thus, a reasoned moral response to the defendant's conduct requires the consideration of the significance of both aggravating and mitigating factors. "[I]n the end it is the jury that must make the difficult, *individualized* judgment as to whether the defendant deserves the sentence of death." *Turner* v. *Murray,* 476 U. S. 28, 34 (1986) (opinion of WHITE, J.) (emphasis added); see also *Zant,* 462 U. S., at 879 ("What is important at the selection stage is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime") (emphasis in original).[6]

The majority cites only *Lowenfield* v. *Phelps,* 484 U. S. 231 (1988), for its conclusion that the jury need not consider the weight of the aggravating circumstance before imposing the death sentence. In *Lowenfield,* the Court upheld the Louisiana death penalty statute under which a jury could impose a death sentence even if the only aggravating factor found duplicated an element of the offense of capital murder.

---

[6] The State argues that allowing the jury to consider the weight of the aggravating circumstance will result in the type of unfettered discretion condemned in *Furman.* This argument was explicitly rejected when the Court upheld the Georgia death penalty statute even though the sentencer was given complete discretion to impose a life sentence after finding an aggravating cirumstance. See *Zant,* 462 U. S., at 875; *Gregg, supra,* at 199 (joint opinion of Stewart, Powell, and STEVENS, JJ.). As the Court noted in *Zant,* "specific standards for balancing aggravating against mitigating circumstances are not constitutionally required." *Zant, supra,* at 876, n. 13. Allowing the jury to weigh the aggravating circumstance as a means of making an individualized sentencing determination no more permits the jury to exercise unbridled discretion than allowing the consideration of mitigating circumstances. *Woodson* held that an individualized determination that the death sentence is appropriate does not violate *Furman. Woodson* v. *North Carolina,* 428 U. S. 280, 303 (1976) (plurality opinion).

*Id.*, at 244. The sole question the Court addressed was whether such an aggravating circumstance sufficiently narrowed the class of death-*eligible* defendants. As the majority notes today, *ante*, at 307, *Lowenfield* held that "[t]he use of 'aggravating circumstances' is not an end in itself, but a means of genuinely narrowing the class of death-eligible persons and thereby channeling the jury's discretion." 484 U. S., at 244. Nothing in *Lowenfield* suggests that a State may preclude a jury from weighing the strength of the aggravating factor.[7] As the majority fails to recognize, under the Pennsylvania statute an aggravating circumstance does much more than "channel" the jury's discretion: in the absence of mitigating factors, it *mandates* the death penalty.

This Court has never held that a legislature may mandate the death sentence for any category of murderers. Instead, a legislature's role must be limited to the definition of the class of death-*eligible* defendants. A legislature does not, and indeed cannot, consider every possible fact pattern that technically will fall within an aggravating circumstance. Hence, the definition of an aggravating circumstance provides a basis for distinguishing crimes only on a *general* level; it does not embody the type of reasoned moral judgment required to justify the imposition of the death penalty. See *Sumner* v. *Shuman, supra*, at 78 (legislative judgment does not "provide an adequate basis on which to determine whether the death sentence is the appropriate sanction in any *particular* case") (emphasis added). The Pennsylvania statute provides a stark example of this constitutional flaw. It permits the jury to find an aggravating circumstance if the

---

[7] The Louisiana statute provides: "'A sentence of death shall not be imposed unless the jury finds beyond a reasonable doubt that at least one statutory aggravating circumstance exists and, after consideration of any mitigating circumstances, recommends that the sentence of death be imposed.'" 484 U. S., at 242 (quoting La. Code Crim. Proc. Ann., Art. 905.3 (West 1984)). The Louisiana law permitted the jury to consider the weight of the aggravating circumstance in a way that the Pennsylvania statute does not.

killing was committed in the course of a felony. 42 Pa. Cons. Stat. § 9711(d)(6) (1988). A variety of murders fit under this aggravating circumstance. Since the Pennsylvania Supreme Court has interpreted this aggravating circumstance to include *nonviolent* felonies, *Commonwealth* v. *Holcomb*, 508 Pa. 425, 498 A. 2d 833 (1985), the aggravating circumstance covers a very wide range of cases. A jury, however, likely would draw a different inference about the culpability of the defendant—and therefore the propriety of the death sentence—if the murder were committed during a rape rather than (as here) during a $13 robbery. The majority today allows the legislature to preclude a jury from considering such factors in deciding whether to impose death.[8]

Such a conclusion flies in the face of our reasoning in *Sumner* v. *Shuman*, 483 U. S. 66 (1987). In *Sumner*, we invalidated a statute that mandated death for a prisoner who committed murder while already serving a life term. Although the Court acknowledged the legislature's power to determine that the crime was sufficiently serious to make the defendants *eligible* for the death penalty, the Court held that the legislature had no power to conclude that the sole fact that the defendant was serving a life sentence justified the death penalty in every such case. *Id.*, at 78–81. As the Court explained:

> "Past convictions of other criminal offenses can be considered as a valid aggravating factor in determining whether a defendant deserves to be sentenced to death for a later murder, but the inferences to be drawn con-

---

[8] The State argues that Pennsylvania law allows the jury to consider the lack of severity of an aggravating factor as a *mitigating* factor. Such a counterintuitive argument is without merit. It is preposterous to assume that a jury that is instructed that a certain fact—*e. g.*, the murder was committed during a robbery—is the *reason* to impose the death penalty will simultaneously believe it can consider that same fact as a reason *not* to impose a death sentence. At the very least, a jury would not understand that without an instruction.

cerning an inmate's character and moral culpability may vary depending on the nature of the past offense. The circumstances surrounding any past offense may vary widely as well. Without consideration of the nature of the predicate life-term offense and the circumstances surrounding the commission of that offense, the label 'life-term inmate' reveals little about the inmate's record or character. Even if the offense was first-degree murder, whether the defendant was the primary force in that incident, or a nontriggerman . . . , may be relevant to both his criminal record and his character. Yet under the mandatory statute, all predicate life-term offenses are given the same weight." *Id.*, at 81 (footnote omitted).

The majority dismisses *Sumner* as inapposite because the sentencing scheme in that case did not allow for the consideration of mitigating evidence. *Ante*, at 306, n. 4. But the discussion quoted above clearly relates to a legislature's power to define aggravating circumstances and precedes any discussion of the significance of mitigating circumstances. In fact, we went on to state that "[n]ot only [do the defendant's prior convictions] serve as incomplete indicators of the circumstances surrounding the murder and of the defendant's criminal record, but also they say nothing of [mitigating circumstances]." 483 U. S., at 81–82. In *Sumner*, the Court invalidated the statute because it precluded the jury from considering mitigating factors *and* because it prevented the jury from determining whether certain crimes were serious enough to require the death penalty.

## C

The Court's suggestion, *ante*, at 303, that *Jurek* v. *Texas*, 428 U. S. 262 (1976), supports its holding in this case reveals

a fundamental misunderstanding of petitioner's claim.[9]  Although both the Texas and Pennsylvania statutes contain mandatory language, the Texas statute upheld in *Jurek* does not deprive the jury of its ability to determine the propriety of the death sentence in a particular case.  In Texas, the class of death-eligible defendants is narrowed at the guilt stage because only five types of murder are classified as first-degree murder.  See *id.*, at 270.  At the sentencing stage, the jury is instructed that it must impose a sentence of death

---

[9] Different Members of the Court have had different interpretations of *Jurek*.  Compare *Penry* v. *Lynaugh*, 492 U. S., at 316, with *id.*, at 354–358 (SCALIA, J., joined by REHNQUIST, C. J., WHITE, and KENNEDY, JJ., concurring in part and dissenting in part); *Franklin* v. *Lynaugh*, 487 U. S. 164, 180, and n. 10 (1988) (plurality opinion).  But until now I thought that all Members of the Court agreed that the holding of *Jurek* was contained in the joint opinion of Justices Stewart, Powell, and STEVENS, which concluded that the statute was constitutional because it adequately narrowed the class of murderers subject to the death penalty and because the questions presented to the jury would be interpreted broadly enough to allow the jury to consider any relevant mitigating circumstance.  *Jurek*, 428 U. S., at 272–273 (joint opinion of Stewart, Powell, and STEVENS).  Indeed, our holding last Term in *Penry* relied on this interpretation of *Jurek*.  *Penry*, *supra*, at 316.  It is curious, therefore, that the Court relies on JUSTICE WHITE's concurrence in *Jurek* to support its conclusion that the Pennsylvania statute is constitutional.  JUSTICE WHITE, joined by Chief Justice Burger and JUSTICE REHNQUIST, concluded that the mandatory language in the Texas statute rendered the statute constitutional.  *Jurek*, *supra*, at 278.  Indeed, JUSTICE WHITE's concurrence in *Jurek* may have depended on the view that the Texas statute was constitutional precisely because it deprived the jury of *all* discretion in determining sentence.  See *Roberts* v. *Louisiana*, 428 U. S. 325, 358 (1976) (WHITE, J., joined by Burger, C. J., and BLACKMUN and REHNQUIST, JJ., dissenting) ("[S]urely a State is not constitutionally forbidden to provide that the commission of certain crimes conclusively establishes that the criminal's character is such that he deserves death"); *Woodson*, 428 U. S., at 306 (WHITE, J., joined by Burger, C. J., and REHNQUIST, J., dissenting).  But a majority of the Court has rejected that reasoning, see *Sumner* v. *Shuman*, 483 U. S. 66, 85 (1987), as well as that reading of the Texas statute.  See *Penry*, *supra*, at 316.

if it answers the following two questions affirmatively: "(1) whether the conduct of the defendant that caused the death was committed deliberately and with the reasonable expectation that the death of the deceased or another would result; (2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing criminal threat to society." *Id.*, at 269.[10] These questions require the jury to do more than find facts supporting a legislatively defined aggravating circumstance. Instead, by focusing on the deliberateness of the defendant's actions and his future dangerousness, the questions compel the jury to make a moral judgment about the severity of the crime and the defendant's culpability. The Texas statute directs the imposition of the death penalty only after the jury has decided that the defendant's actions were sufficiently egregious to warrant death.

The mandatory language in the Pennsylvania statute, however, does deprive the jury of any power to make such an independent judgment. The jury's determination that an aggravating circumstance exists ends the decisionmaking process. In addition, whether an aggravating circumstance exists is generally a question of fact relating to either the circumstances of the offense,[11] the status of the victim,[12] or the defendant's criminal record.[13] In many cases, the existence of the aggravating factor is not disputed. Finding an aggravating circumstance does not entail any moral judgment about the nature of the act or the actor, and therefore it does not give the jury an opportunity to decide whether it believes the defendant's particular offense warrants the death pen-

---

[10] A third question applies only if raised by the evidence: " 'whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.' " *Jurek, supra*, at 269.

[11] See 42 Pa. Cons. Stat. §§ 9711(d)(2), (4), (6), (7), (8) (1988).

[12] See §§ 9711(d)(1), (3), (5).

[13] See §§ 9711(d)(9)–(12).

alty.[14]   Because the mandatory language in the Pennsylvania statute deprives a defendant of an individualized sentencing hearing in a way that the Texas statute does not, *Jurek* in no way supports the Court's conclusion that the Pennsylvania statute is constitutional.

## III

The Court's refusal to recognize that the "mandatory aspect" of the Pennsylvania statute deprives the defendant of an individualized sentencing hearing is contrary to reason. Rather than address the merits of petitioner's claim, the majority summarily concludes that the Eighth Amendment is "satisfied" because the jury may consider mitigating evidence.[15]   Although our cases clearly hold that the ability to consider mitigating evidence is a constitutional requirement, it does not follow that this ability satisfies the constitutional demand for an individualized sentencing hearing.   The "weight" of an aggravating circumstance is just as relevant to

---

[14] The finding of three of the statutory aggravating circumstances requires more than the finding of facts.   For example, the State may prove that the defendant created a grave risk of harm to others, that the killing was marked by torture, or that the defendant had a significant history of felony convictions involving the use of violence.   §§ 9711(7), (8), (9).   It is arguable that the jury's consideration of these aggravating circumstances allows the jury to conclude that the crime does not warrant the death penalty.   However, unlike in Texas, the jury in every case is not required to consider these aggravating circumstances.   Thus, at least in cases such as this one where these aggravating circumstances are not proffered, the jury has no ability to make any judgment about the seriousness of the crime.

[15] The Court's language is distressingly casual.   We have long held that the ability of the sentencer to consider mitigating circumstances is a necessary—not just a sufficient—condition for the imposition of the death penalty.   The defendant's right to have a jury consider mitigating circumstances is a fundamental part of the jury's role in a capital sentencing case which this Court has stringently protected.   See *Penry* v. *Lynaugh*, *supra*, at 319; *Mills* v. *Maryland*, 486 U. S. 367, 377 (1988); *Hitchcock* v. *Dugger*, 481 U. S. 393, 399 (1987); *Skipper* v. *South Carolina*, 476 U. S. 1, 8 (1986); *Eddings* v. *Oklahoma*, 455 U. S. 104, 116 (1982); *Lockett* v. *Ohio*, 438 U. S., at 605.

the propriety of the death penalty as the "weight" of any mitigating circumstances. The Court's unarticulated assumption that the legislature may define a group of crimes for which the death penalty is required in certain situations represents a marked departure from our previous cases. The Court's failure to provide any reasoning to reject a claim well grounded in our case law is always disturbing. An unexplained departure from fundamental principles in the death penalty context is inexcusable. I respectfully dissent.

## IV

Even if I did not believe the Pennsylvania statute unconstitutionally deprives the jury of discretion to impose a life sentence, I would vacate petitioner's sentence. I adhere to my belief that the death penalty is in all circumstances cruel and unusual punishment. *Gregg* v. *Georgia*, 428 U. S., at 227 (BRENNAN, J., dissenting).