**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**
No. 97-1280

| | |
|---|---|
| Johnie Cox, | * |
| | * |
| Appellant, | * |
| | * On an Application for a Certificate |
| v. | * of Appealability from an Order of |
| the | |
| | * United States District Court for the |
| Larry Norris, | * Eastern |
| District of Arkansas. | |
| | * |
| Appellee. | * |

———————

Submitted: September 17, 1997
Filed: December 29, 1997

———————

Before McMILLIAN, FLOYD R. GIBSON, and BEAM, Circuit Judges.

———————

BEAM, Circuit Judge.

Arkansas death-row inmate Johnie Cox seeks a certificate of appealability of his 28 U.S.C. § 2254 habeas corpus action. Cox has been sentenced to death for the 1989 murders of Marie Sullens, Margaret Brown, and William Brown. We deny the application.

## I.    BACKGROUND

On November 1, 1989, Cox went to Marie Sullens's apartment to kill her. He had chosen that date, All Saints Day, because he thought she would go to heaven if she

died on that day. Sullens was married to Cox's grandfather. He later told police that he had killed Sullens because he suspected that she was trying to kill his grandfather.

When he arrived at her apartment, he found that Margaret and William Brown were there, too. Shortly after he arrived, Cox threatened William Brown with a .22 pistol and ordered him to bind Sullens and Margaret Brown with duct tape. Cox then tied up William and bound all three together at the neck. He first tried to sedate the three victims with sleeping medication. Because the drug took too long to take effect, he stabbed the victims and also attempted to shoot Margaret Brown. Later, unhappy with the delayed effect of the stabbing, Cox attempted to strangle the three victims and then set fire to the house. All three individuals died as a result of stab wounds and injuries from the fire. Margaret Brown died before the fire as a result of fourteen stab wounds and strangulation. William Brown had wires around his neck and two stab wounds, but died in the fire. Sullens had six stab wounds, some penetrating her lungs, but also died in the fire.

Cox was arrested and confessed in detail, in writing and on videotape, to the murders. He was tried and sentenced to death in a bifurcated proceeding. After trial, he filed a motion for a new trial, alleging that his trial counsel was ineffective. After a hearing, the trial court denied the motion. He appealed both his conviction and the denial of his motion for a new trial to the Arkansas Supreme Court. He raised essentially the same issues in state court that he raises here. The Arkansas Supreme Court denied relief. Cox v. State, 853 S.W.2d 266 (Ark.1993).

He then filed a petition for habeas corpus relief in federal district court. After two hearings,[1] the district court denied the petition. Cox v. Norris, No. PB-C-93-625,

---

[1] The Honorable George Howard, Jr., held a hearing on June 10, 1994, at which Cox's counsel and others testified. The case was later transferred to the Honorable William R. Wilson, Jr. Because issues of credibility were involved, Judge Wilson held a second hearing involving the same witnesses on November 18, 1996.

Transcript of Motions Hearing (E.D. Ark. October 22, 1996); Transcript of Evidentiary Hearing at (E.D. Ark. Nov. 18, 1996); Order (E.D. Ark. Nov. 22, 1996).

## II. DISCUSSION

This matter is before us on an application for a certificate of appealability pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") which became effective on April 24, 1996.[2]  Cox first applied to the district court for the certificate.  The district court denied Cox's application under the assumption that it lacked authority to consider such motions.  Cox v. Norris, No. PB-C-93-625, Order (E.D. Ark. January 23, 1997).  However, district courts, as well as appeals courts, have the authority to issue certificates of appealability under the AEDPA.  See Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997).  Having reviewed the entire record, we see no reason to go through the unnecessary step of remanding to the district court and we will treat Cox's notice of appeal as an application for a certificate of appealability addressed to the judges of this Court.  See id. at 522.

To grant a certificate of appealability, we must find a substantial showing of the denial of a federal constitutional right.  See id.  A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings.  See Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994).  With those standards in mind, we find that Cox's application for a certificate of appealability should be denied.

---

[2]The AEDPA made no substantive changes in the standards by which applications for certificates of appealability (formerly known as "certificates of probable cause to appeal") are governed. See Tiedeman v. Benson, 122 F.3d 518, 521 (8th Cir. 1997).  Thus, the Act is applicable to this action, even though Cox's habeas corpus petition was filed before the enactment of the AEDPA. See id.

**A.    Continuance**

Cox's first claims that he was denied his right to due process and his Sixth Amendment right to a fair jury as a result of the trial court's refusal to grant his request for a continuance because of excessive publicity about the death penalty. The first person to be executed in Arkansas since 1964 had been put to death a week before Cox's trial. Another death row inmate was executed on the evening of the first day of Cox's trial. Both executions received considerable coverage in the media. Cox contends that the publicity about the death penalty in connection with the executions made it impossible for the court to assemble a fair and impartial jury. Although the trial court denied the motion to continue, one hundred extra people were included in the jury pool to ensure that there would be enough potential jurors who were not tainted by the publicity.

Both the Arkansas Supreme Court and the federal district court found that there was considerable publicity concerning the death penalty at the time of the executions. The determinative inquiry, however, is not the amount of publicity, but the effect of the publicity on prospective jurors. See Orsini v. Wallace, 913 F.2d 474, 482 (8th Cir. 1990). The jurors need not be totally ignorant of the facts and issues involved; it is sufficient if a juror can lay aside his or her impression or opinion and render a verdict based on the evidence presented in court. See Perry v. Lockhart, 871 F.2d 1384, 1390 (8th Cir. 1989).

As a federal court conducting habeas corpus review, we must defer to the state trial court's determination that the jury was not prejudiced by pretrial publicity. See Swindler v. Lockhart, 885 F.2d 1342, 1347 (8th Cir. 1989). This determination is essentially a factual conclusion entitled to a presumption of correctness unless the state court hearing was procedurally defective or unless the federal court, on considering the record as a whole concludes that the factual determination is not fairly supported. See

Perry, 871 F.2d at 1390.  Thus, the determination can only be overturned for "manifest error."  Swindler, 885 F.2d at 1347; see also Hill v. Lockhart, 28 F.3d 832, 848 (8th Cir. 1994) (noting little practical difference between "manifest error" and "fairly supported by the record" standards).

Our review of the record shows that the state court's determination is fairly supported and thus we can find no manifest error.[3]  Both the trial court and counsel carefully questioned potential jurors about the publicity at individual, sequestered voir dire.  Extra jurors had been assembled, as indicated.  We have reviewed the record and find that the voir dire assured that the jurors were not affected by the publicity.  In addition, we find that the publicity surrounding the executions could cut both ways; that is, a potential juror could be equally swayed against the death penalty as for the death penalty by the publicity.

B.    Constitutionality of Statute

Cox's next contention is that the Arkansas capital murder statute is unconstitutional.  He first argues that it impermissibly fails to narrow the class of persons who are death eligible.  We rejected this argument with regard to the Arkansas capital murder statute in Perry v. Lockhart, 871 F.2d at 1392-93.  In Perry, we applied the standards enunciated in Lowenfield v. Phelps, 484 U.S. 231 (1988), to the Arkansas statute.  Perry, 871 F.3d at 1392-93.  A capital punishment scheme must genuinely narrow the class of persons eligible for the death penalty and must justify the imposition of a more severe sentence on the defendant compared to others found guilty

---

[3]In the related context of a habeas petitioner alleging improper denial of a motion to change venue, "it is the 'duty of the Appeals Court to independently evaluate the voir dire testimony of the empaneled jurors.'"  See Hill, 28 F.3d at 847 (quoting Irvin v. Dowd, 366 U.S. 717, 723 (1961)).  The district court conducted such a review, as has this Court.

of murder.  See id. 871 F.2d at 1392.  This requirement may be satisfied in two ways--either a state legislature may explicitly restrict the definition of capital murder, or a jury may perform the narrowing function during the penalty phase by ascertaining whether any aggravating circumstances exist.  See id.

The Arkansas scheme satisfies these requirements.  Cox was convicted under a broad definition of a capital offense--"[w]ith the premeditated and deliberated purpose of causing the death of another person, he causes the death of any person"--that differs from the first-degree murder offense in that it requires premeditated and deliberated purpose as opposed to "a purpose of causing the death" or "knowingly caus[ing] the death of a person under the age of fourteen.  Compare Ark. Code Ann. § 5-10-101(a)(4) (capital murder) with Ark. Code Ann. § 5-10-102(a)(2)and (3) (first degree murder).  Moreover, the class is narrowed by the application of aggravating circumstances by the jury.  Ark. Code Ann. § 5-4-604(1)-(9); Perry, 871 F.2d at 1393.  Arkansas also requires that the jury find that the aggravating circumstance or circumstances outweigh any mitigating factors and justify a sentence of death beyond a reasonable doubt.  See Ark. Code Ann. § 5-4-603(1)-(3); Perry, 871 F.2d at 1393.  Accordingly, we find that the Arkansas statute satisfies constitutional requirements.

Cox also asserts that the Arkansas capital murder statute violates the Eighth Amendment because it does not give the jury the option of mercy. The statute contains the mandatory language that the jury "shall impose a sentence of death" if it finds beyond a reasonable doubt that aggravating factors exist and outweigh all mitigating circumstances found to exist. Ark. Code Ann. § 5-4-603(a).  Death penalty statutes having some "mandatory" aspects have been upheld as constitutional.  See, e.g., Jurek v. Texas, 428 U.S. 262 (1976) (finding constitutional death penalty statutes that contained mandatory language but that allowed the jury to consider mitigating factors); Blystone v. Pennsylvania, 494 U.S. 299 (1990) (same); and Boyde v. California, 494

U.S. 370 (1990) (same).  We approved of the "shall impose" language in the Arkansas statute in <u>Singleton v. Lockhart</u>, 962 F.2d 1315, 1323 (8th Cir. 1992).

Here, the jury was given room for mercy.  It was instructed that it could return a sentence of death only if it unanimously found three things: 1) that one or more aggravating factors existed; 2) that such aggravating circumstances outweighed, beyond a reasonable doubt, any mitigating circumstances found to exist; and 3) that the aggravating circumstance justified beyond a reasonable doubt, the sentence of death.  Defense counsel's closing argument emphasized the fact that the jury had the option of a sentence of life without parole.  In addition, at the hearing in district court, counsel conceded that the jury had actually been instructed with use of the word "may."  Under the circumstances, we find no constitutional error.

Next, Cox claims that the jury used an improper aggravator to sentence him to death.  One of the statutory aggravators used was that "the person in the commission of the capital murder knowingly created a great risk of death to a person other than the victim."  Ark. Code Ann. § 5-4-604 (4).  Cox argues that use of each homicide as an aggravating circumstance of the other fails to satisfy the narrowing function and constitutes "double counting."  As noted above, the Arkansas scheme sufficiently narrows the death eligible class.  We approved use of this aggravator in <u>Perry</u>, 871 F.2d at 1392.  Cox's double counting argument is also foreclosed by <u>Perry</u>, 871 F.2d at 1393.  Duplication of an element of a capital offense by one or more aggravating circumstances does not render the Arkansas death penalty scheme unconstitutional.  <u>See</u> <u>Wainwright v. Lockhart</u>, 80 F.3d 1226, 1232 (8th Cir.), <u>cert. denied</u>, 117 S. Ct. 395 (1996).

**C.   Jury Issues**

Cox also asserts that his Sixth Amendment right to an impartial jury was violated in the trial court's actions in empaneling the jury regarding three incidents. First, the court excused Bertha Thacker for cause, over a defense objection, when it was shown that the State's attorney had prosecuted her son and that the sheriff's department was investigating her husband. The trial court admitted extrinsic evidence when it allowed the sheriff, who was already present in the courthouse, to testify about the investigation of her husband. Cox contends Thacker would have been favorable to the defense. Next, the trial court refused to excuse Tena Hodges for cause on a defense motion. Cox's attorney had represented Hodges's former husband in her divorce nine years earlier. Hodges stated at voir dire that she had no hard feelings and could be impartial. In response to the question, "Would you say your philosophy in regard to the death penalty makes you favor the death penalty a little bit?," Hodges answered, "Maybe." When the trial court denied Cox's motion to excuse Hodges for cause, Cox was compelled to use a peremptory challenge on Hodges. Finally, the trial court refused to excuse Grover Davis for cause or to allow extrinsic evidence showing his partiality. Because Cox had used up his twelve peremptory challenges, Davis sat on the jury. Cox contends that juror Davis was hostile to Cox and to the defense attorney.

First, we reject Cox's claim with respect to Thacker. There was ample reason to have excused her for cause. It was clear that she was acquainted with, and had reason to have animosity toward, the prosecution. Although the taking of extrinsic evidence on the matter of the sheriff's investigation may have been unorthodox, we cannot say it was prejudicial error. The sheriff was nearby in the courthouse and was merely asked whether he was investigating Thacker's husband.

Next, Cox's claim with respect to juror Hodges is without merit. Any Sixth Amendment claim must focus exclusively on jurors who actually sat. See Sloan v. Delo, 54 F.3d 1371, 1387 n.16 (8th Cir. 1995), cert. denied, 116 S. Ct. 728 (1996). Peremptory challenges are not of constitutional dimension--loss of a peremptory

-8-

challenge does not constitute a violation of the constitutional right to a fair jury. See Ross v. Oklahoma, 487 U.S. 81, 88 (1988). As long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated. See id.

The inquiry thus narrows to juror Davis. The Arkansas Supreme Court found no abuse of discretion in the trial court's handling of juror Davis. See Cox, 853 S.W.2d at 271. The trial court stated, "[t]he Court sensed that during the voir dire of that prospective juror that the defense counsel was somewhat antagonistic toward the juror, but the juror continued to state under oath that he could try this case based upon the law and evidence, and that he had no hard feelings toward the defendant nor his attorney, and the defense has not established actual bias." Trial Transcript at 1124-25. The district court held two hearings to resolve credibility issues involving the alleged hostility of juror Davis. The district court conceded that it might have excused Davis had it been trying the case but found "on the record as a whole, giving due deference to the trial court and the state court, as a matter of fact, there was no habeas-type error here." Evidentiary Hearing at 81 (E.D. Ark. Nov. 18, 1996).

We agree with the district court. We have reviewed the record and find that the trial court properly declined to excuse Davis for cause. Although Davis stated that he favored the death penalty for kidnapping and stated that it has a deterrent effect, he also stated that he could be even-handed and did not philosophically lean to the death penalty. It appears that Cox's counsel may have tried to provoke Davis into a confrontation in an effort to have him excused for cause since he lacked peremptory challenges. At any rate, Davis stated that he had "nothing against [Cox's counsel] whatsoever." Trial Transcript at 1035. Cox alleges that juror Davis winked at the prosecution at one point. There is no allegation that the "wink" was observed by the other jurors. We defer to the trial court's superior ability to assess the demeanor of

Davis and the attorneys. Moreover, we are convinced that any animosity that might have existed was harmless.

Because the Arkansas Supreme Court found no error, it did not conduct a harmless error review. When a state court has not conducted a harmless error review, we must use the strict standard found in Chapman v. California, 386 U.S. 18 (1967), in conducting harmless error review. See Joubert v. Hopkins, 75 F.3d 1232, 1245 (8th Cir.), cert. denied, 116 S. Ct. 2574 (1996). Under Chapman, we must determine whether any error is harmless beyond a reasonable doubt. See Chapman, 386 U.S. at 24.

We have reviewed the record and find, in light of the overwhelming evidence of Cox's guilt, including his dispassionate confession, that any error involving juror Davis was harmless beyond a reasonable doubt. Cox confessed in detail to the murders. Law enforcement officers first took a verbal statement and later videotaped Cox's confession. The jurors heard and viewed this evidence. In the confessions, Cox recounts his efforts to kill his three victims and describes several trips to the kitchen to eat chips and drink Coke while his victims suffered. He describes his efforts to kill Margaret Brown:

> I yanked [her coat] up because she started making noises and stuff like that, and so I muffled it the best I could until I could get in a position. I tried stabbing her and couldn't kill her, so I just [ ] shot her and couldn't kill her, so I just took an electrical cord and wrapped it around her neck and held it with one of my feet and took my hands and pulled it up until I choked her to death, but she was even breathing after that.

Trial Transcript at 1224. He tells of setting the fire with "greenish looking foam and some plastic to make the smoke toxic so it would take the air out, take the oxygen out." Id. at 1225. There are no contentions, and indeed no evidence to suggest, that the

confession was anything but voluntary. There was also substantial evidence in the penalty phase of the trial to support a sentence of death. In light of this evidence, we find any error that might have occurred is harmless beyond a reasonable doubt.

### D. Ineffectiveness of Counsel

Finally, Cox contends his counsel was ineffective in three particulars: 1) not requesting a change of venue because of pretrial publicity; 2) not investigating the possibility that others were guilty of the crimes; and 3) provoking and alienating juror Davis. A petitioner's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. See Strickland v. Washington, 466 U.S. 668, 687 (1984). First, the petitioner must show that counsel's performance was deficient. See id. Second, the petitioner must show that the deficient performance prejudiced the defense. See id. With respect to attorney performance, we must determine whether, in light of all the circumstances, the lawyer's performance was outside the range of professionally competent assistance. See id. at 690. Reasonable performance includes an adequate investigation of the facts, consideration of viable theories, and development of evidence to support those theories. See Hill, 28 F.3d at 837.

In order to show prejudice, the petitioner must show that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. See Strickland, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.

None of Cox's contentions of ineffective assistance regarding pretrial publicity meets these standards. Cox's counsel testified at the hearing in district court that he did not want to change venue because he believed other counties were prone to harsher sentences. That tactical decision is not outside the range of professional competence.

Again, in light of overwhelming evidence, Cox cannot show prejudice from that action.

The allegation concerning failure to investigate other perpetrators involves Cox's sister and her boyfriend, Sue Cox and Milo Healey. Sue Cox and Milo Healey had been suspects in the murder and had been questioned by police. Before the trial, Milo Healey had appeared at Cox's attorney's office and implicated himself in the murder. Cox's attorney immediately reported this to the police and to the prosecution, who discounted it as contrary to Healey's earlier sworn statement. There was no direct or circumstantial evidence linking either Healey or Sue Cox to the murders.

The record shows that Cox's attorney actively pursued the theory that Milo and Sue were involved in the murders. At trial, defense counsel questioned numerous witnesses about hostility and confrontations between Milo and Sue and the victims. Margaret Brown's father testified, in fact, that Sue Cox had broken Marie Sullens's arm and tried to strangle her with a coat hanger two weeks before the murders. Three hours before the murders, Milo and Sue had threatened to burn Sullens's house down. Cox's attorney testified in district court that he made a tactical decision at trial to imply that Milo Healey and Sue Cox were involved in the murders, but not to call them to testify because he feared their stories would fall apart on cross-examination. That tactical decision is not outside the range of professional competence. The jury heard evidence and argument on the theory and chose to reject it. Further, Cox can show no prejudice because even if the others were implicated, Cox would not have been exonerated--he had confessed to the murders.

We are bound by the trial court's factual finding that if cox's attorney had attempted to provoke juror Davis, it had not affected Davis's ability to be fair and impartial. Assuming, however, that such provocation was outside the realm of professional competence, we find no prejudice. As noted above, the evidence against Cox was overwhelming.

**III.  CONCLUSION**

Our review of the record convinces us that Cox received a fair trial. We find that the issues raised in his Cox's motion for a certificate of appealability are not debatable among reasonable jurists, no court could resolve the issues differently and the issues deserve no further proceedings. Accordingly, the motion for a certificate of appealability is denied.

McMILLIAN, Circuit Judge, concurring.

I concur specially; however, I reject the notion that district courts have the power to grant certificates of appealability.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.