[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-15179

_____

D.C. Docket No. 0:12-cr-60277-DTKH-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GUIDO HALAYN DE LA TORRE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 15, 2015)

Before MARCUS and WILSON, Circuit Judges and THAPAR,* District Judge.

PER CURIAM:

_____

*Honorable Amul R. Thapar, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

Guido Halayn De La Torre (De La Torre) challenges his 144-month total sentence imposed following his conviction after a trial by jury on one count of conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349 (Count 1), and nine counts of health care fraud, in violation of 18 U.S.C. § 1347 (Counts 3–11).  On appeal, De La Torre argues that (1) insufficient evidence supports his conviction; (2) cumulative trial error—based on the district court's alleged erroneous exclusion of evidence and improper jury instructions—warrants the reversal of his conviction; (3) the district court erred in applying an eighteen-level enhancement after determining that the loss to the United States government caused by his crime exceeded $2.5 million; and (4) the district court erred in applying a four-level role enhancement for De La Torre's role as  an organizer or leader of other criminal participants.

De La Torre first claims that the evidence is insufficient to support his conspiracy conviction because co-conspirator Blanco Castro (Castro) provided false invoices to cover up the submission of false claims for Medicare recipients only *after* the alleged incidents of substantive fraud, thereby showing no conspiratorial agreement.  We are unpersuaded.  "We review de novo whether there is sufficient evidence to support a jury's verdict in a criminal trial."  *United States v. Doe*, 661 F.3d 550, 560 (11th Cir. 2011).  Taking the evidence in the light most favorable to the government and resolving all reasonable inferences and

2

credibility determinations in favor of the jury's verdict, *see id.*, the evidence was more than sufficient to establish the elements of a conspiracy, namely that (1) an agreement existed between two or more people to commit a crime; (2) that De La Torre had knowledge of at least the essential objectives of that agreement; and (3) that armed with that knowledge, De La Torre voluntarily joined or participated in the illegal venture, *see, e.g.*, *United States v. Pantoja-Soto*, 739 F.2d 1520, 1525 (11th Cir. 1984).

The testimony at trial demonstrated that De La Torre procured Castro, owner of Trump Wholesale Pharmaceuticals (Trump), to make false invoices for him when insurance companies, including CVS Caremark (CVS), began auditing Speed Pharmacy, owned and operated by De La Torre. De La Torre submitted false claims for expensive medications for Medicare recipients that never received or even needed the medication. At trial, CVS auditors, one of the first to audit Speed Pharmacy, testified that, during the relevant time period, Speed Pharmacy overbilled over $100,000.00 to CVS alone. There is also evidence that De La Torre deposited approximately $5.9 million dollars into Speed Pharmacy's bank account based on the false submissions. Castro testified that she prepared around 20 to 30 false invoices from Trump in exchange for De La Torre paying her a percentage of the face value of the false invoices. Castro backdated the application to purchase drugs for De La Torre, and De La Torre then backdated checks to

3

Trump. One audit revealed that Speed Pharmacy had been overpaid $2,411,944.23.

Thus, based on De La Torre's testimony, Castro's testimony, testimony by phantom customers who never received prescriptions for which they were charged, as well as audits by CVS and the other insurance companies, there is more than sufficient evidence upon which the jury could rely to conclude that De La Torre and Castro entered into an agreement to conceal health care fraud through Castro furnishing false invoices in exchange for cash in addition to efforts to cover up previous conduct with fake invoices.

De La Torre, however, maintains that he cannot be liable for conspiracy where the objective was to conceal a previous fraud, relying on *Grunewald v. United States*, 353 U.S. 391, 77 S. Ct. 963 (1957). *Grunewald* held that "after the central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment." 353 U.S. at 401–02, 77 S. Ct. at 972. As we have previously discussed, the core concern in *Grunewald* was "the government's failure to establish that concealing the crime was an objective of the conspiracy." *United States v. Helmich*, 704 F.2d 547, 549 (11th Cir. 1983). No such failure occurred here. The mountain of testimony

4

demonstrated that the objective of the conspiracy between De La Torre and Castro was to conceal health care fraud.  By using the false invoices to hide his fraudulent billing scheme from the insurance companies, De La Torre conspired to "defraud a[ ] health care benefit program."  18 U.S.C. §§ 1347(a)(1), 1349.  *Grunewald* requires no more.

As far as the incidents of substantive fraud, there is clearly sufficient evidence in the light most favorable to the government.  *See* 18 U.S.C § 1347 (elements of healthcare fraud).  Many of the alleged recipients of the drugs testified that they had never used Speed Pharmacy before and the substantive counts alleging health care fraud were further supported by multiple audits by independent companies.

As for De La Torre's claim of cumulative error, we see no error warranting a reversal of his conviction.  We will reverse a conviction only if "any errors that we find in the aggregate and in light of the trial as a whole" deprive an appellant of a "fundamentally fair trial."  *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012).  The aggregated errors must "have a substantial influence on the outcome of a case or leave great doubt as to whether they affected the outcome of a case."  *United States v. Frazier*, 387 F.3d 1244, 1266 n.20 (11th Cir. 2004) (en banc) (internal quotation marks omitted).  We are unable to conclude that the district court erroneously applied the relevant hearsay rules when it excluded from

evidence the prescriptions that De La Torre's pharmacy filled.  And we are unable to conclude that any extemporaneous instructions by the district court regarding the burden of proof constitute reversible error.  However, even if the court erred in excluding the prescription evidence, the error was harmless as the prescriptions would have done nothing to rebut the government's case, since the critical issue at the trial was whether the defendant billed for drugs that he did not even have in his inventory, and establishing that De La Torre conducted at least some normal business activity does not rebut this.

De La Torre also argues that the district court erred at sentencing.  "We review the district court's application and interpretation of the Sentencing Guidelines under the de novo standard, but review its findings of fact only for clear error." *United States v. Harness*, 180 F.3d 1232, 1234 (11th Cir. 1999).  The "district court's determination regarding the amount of loss for sentencing purposes is reviewed for clear error." *United States v. Manoocher Nosrati-Shamloo*, 255 F.3d 1290, 1291 (11th Cir. 2001) (per curiam).  When reviewing for clear error, we reverse only if we are left with the definite and firm conviction that a mistake has been committed and not "simply because we would have decided the case differently." *Easley v. Cromartie*, 532 U.S. 234, 242, 121 S. Ct. 1452, 1458 (2001) (internal quotation marks omitted).

For offenses involving fraud, the Guidelines provide an increase to a defendant's offense level depending on the amount of loss that resulted from the fraud.  *See* U.S.S.G. § 2B1.1(b)(1).  In determining a proper sentence where the offense level is determined largely on the basis of the total amount of a loss, or some other measure of aggregate harm , the court must consider all acts of the defendant that were part of the same course of conduct or common scheme or plan as the offense of conviction.  *See* U.S.S.G. § 1B1.3(a)(2).  The offense level is increased by 18 where the loss amount is greater than $2,500,000, but less than $7,000,000.  U.S.S.G. § 2B1.1(b)(1)(J)–(K).  When calculating loss for sentencing purposes, the district court looks to "the greater of actual loss or intended loss." U.S.S.G. § 2B1.1(b)(1) cmt. n.3(A).  Actual loss is the "reasonably foreseeable pecuniary harm that resulted from the offense," and intended loss is "the pecuniary harm that was intended to result from the offense."  U.S.S.G. § 2B1.1(b)(1) cmt. n.3(A)(i)–(ii).  In determining the amount of loss for sentencing purposes, "[t]he court need only make a reasonable estimate of the loss," and its "loss determination is entitled to appropriate deference."  U.S.S.G. § 2B1.1 cmt. n.3(C).

Under U.S.S.G. § 1B1.3, "the district court may hold participants in a conspiracy responsible for the losses resulting from the reasonably foreseeable acts of co-conspirators in furtherance of the conspiracy."  *United States v. Hunter*, 323 F.3d 1314, 1319 (11th Cir. 2003).  The district court did not clearly err in applying

7

an 18-level enhancement for De La Torre's loss amount because it reasonably estimated that De La Torre's combined conduct for Speed Pharmacy and Atlantis Pharmacy[1] resulted in a loss exceeding $2,500,000. Assuming that the district court erred in failing to consider De La Torre's new factual theory at sentencing that based on the delay of Medicare or the fault of the insurance companies, Speed Pharmacy had no choice but to bill for brand name drugs even though brand name drugs were not being given to the patients, the error would not have altered De La Torre's total sentence. The new theory was unsupported by any evidence, only applied to drugs for which the Medicare billing system did not recognize a generic equivalent, only applied during the 30–60 day gap between FDA approval and Medicare approval for the generic equivalent, only applied for 2 months per drug for a conspiracy that spanned 50 months, and, even for those drugs and during those time periods, typically represented a 96% loss to Medicare.

Nor did the district court clearly err in applying a four-level enhancement for De La Torre's role as a leader or organizer. "A defendant's role as an organizer or leader is a factual finding that we review for clear error to determine if the enhancement under §3B1.1 was applied appropriately." *United States v. Barrington*, 648 F.3d 1178, 1200 (11th Cir. 2011) (internal quotation marks

---

[1] On July 2, 2013, De La Torre pled guilty to health care fraud charges in a separate case featuring health care fraud through Atlantis Pharmacy, another pharmacy he owned with his father.

omitted).  A defendant's offense level is increased by four levels if "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."  U.S.S.G. § 3B1.1(a).  In determining whether a defendant "was an organizer or leader," the court should consider "the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others."   U.S.S.G. § 3B1.1(a) cmt. 4.

The record supports the district court's conclusion that De La Torre satisfied the leader or organizer Guideline factors, including his exclusive control over the Speed Pharmacy conspiracy that resulted in 60% of the total loss and his recruitment of co-conspirator Castro to help conceal the fraud at both pharmacies. Although a mere buyer-seller relationship, without more, is insufficient for characterizing a defendant as a leader or organizer of a criminal scheme, *United States v. Yates*, 990 F.2d 1179, 1182 (11th Cir. 1993) (per curiam), De La Torre's contention that he had only a buyer-seller relationship with Castro is belied by the evidence.

Role enhancements are based on all relevant conduct.  *See* U.S.S.G.§ 3B1.1 intro. cmt.  No fixed number of participants is required, as long as at least one

9

participant other than the defendant was involved. *See United States v. Holland*, 22 F.3d 1040, 1045 (11th Cir. 1994). De La Torre owned Speed Pharmacy, hired the staff at Speed Pharmacy, oversaw the billing at Speed Pharmacy, worked with his father at Atlantis Pharmacy in another scheme, and solicited Castro to provide phony invoice records to continue to conceal the scheme from suspicious insurance auditors.

Accordingly, we affirm De La Torre's conviction and sentence.

**AFFIRMED.**