[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-14395
Non-Argument Calendar
_____

D.C. Docket No. 2:12-cr-14054-KMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CAMERON DEAN BATES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 29, 2016)

Before WILSON, MARTIN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Cameron Bates appeals his convictions for four counts of knowing receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1); one count of knowing distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1); and one count of knowing possession of a computer containing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). Bates argues that certain reports the government put into evidence at trial were impermissible hearsay and violated his rights under the Sixth Amendment Confrontation Clause. He argues as well that the government made improper references to him that also violated his Sixth Amendment right to a fair trial. Our careful review persuades us that although Bates is correct that the reports were hearsay and that some of the government's remarks were improper, even combining these two errors was harmless in light of the substantial untainted evidence against him. As a result, we affirm.

I.

In 2011, the Internet Crimes Against Children, Child Online Protective Services ("ICACCOPS") task force got information that someone in the St. Lucie County, Florida area was downloading and sharing child pornography files over the Internet. The St. Lucie County Sheriff's Office began investigating and, after subpoenaing Internet service providers, linked these files to the addresses of Bates and Samuel Gruen. Bates worked for Gruen, and had a personal relationship with

2

him as well.[1]  The Sheriff's Office initially discontinued its investigation of Bates, but reopened it in May 2012, after receiving another report from the Child Protective System ("CPS") database that targeted Bates.

In June 2012, the government got a warrant to search Bates's home.  They found three computers in his house, and one in his car.  All four computers were searched.  The three computers found in Bates's house belonged to Bates's family members and had no child pornography on them.  But the government's initial on-site search of the computer found in Bates's car revealed that it had at least eighty child pornography files.

The government interviewed Bates as well as his wife and children during the search.  Both Bates and his wife told the government in these interviews that the laptop found in the car belonged to Bates.  When Bates was asked about the child pornography files, he admitted that he downloaded them, but claimed that he had done so unintentionally.  He also admitted he downloaded child pornography files at Gruen's home, but claimed to have done that unintentionally as well.

Bates was tried and convicted on eighteen counts and sentenced to 240 months' imprisonment followed by 15 years of supervised release.  Bates appealed, and this Court vacated his convictions because the district court did not allow

---

[1] The investigation also indicated that Gruen's neighbor's Internet connection was used to access child pornography.  However, she used an unsecured wireless network that anyone within range could join without a password.  She testified that she never used her Internet connection to access child pornography.

examination of prospective jurors about possible prejudices against Bates because of his sexual activity with other men.  See United States v. Bates, 590 F. App'x 882 (11th Cir. 2014).  On remand, the government retried Bates, this time only on six counts.

At the second trial, Bates's defense was that the evidence raised a reasonable doubt about whether he was responsible for the child pornography found on the computer in his car.  Bates argued that because he did not have exclusive control over the laptop, the child pornography files could have been downloaded by a friend or family member.  His wife and sister-in-law testified that the computer found in his car was a shared family computer.  The government characterized this defense as a "smokescreen," to which Bates repeatedly objected.

The government's case relied primarily on forensic evidence including 110 child pornography files found on Bates's computer, real-time confirmation of Bates sharing a child pornography file, and other evidence that only Bates used the computer.  This evidence included his Craigslist posts, personal emails, business materials, family photos, and personal photos of himself naked.  Much of this evidence was introduced through the testimony of Sergeant Rob Valentine.  Sgt. Valentine explained that he used the ICACCOPS and CPS databases, as well as data from the National Center for Missing and Exploited Children ("NCMEC") that contained known child pornography designations for certain files, to assist in

4

his investigation.  Over Bates's objections, the district court admitted ICACCOPS reports and logs, a CPS report, and a spreadsheet consolidating the data from those reports and logs.  The district court admitted these documents into evidence, ruling that they were regularly conducted records of law enforcement, and therefore admissible under the Federal Rule of Evidence 803(6) hearsay exception.  Sgt. Valentine also testified that Bates was a "big fish," the "worst offender," and the "worst user," which is how he came to investigate Bates.  The government used these same characterizations in their opening statement, examinations of witnesses, and closing arguments.

The jury found Bates guilty on all six counts.  The district court again sentenced Bates to 240 months' imprisonment followed by 15 years of supervised release.

## II.

On appeal, Bates asserts two errors by the district court.  First, he argues it was error for the court to admit the ICCACOPS and CPS child pornography investigation reports, ICCACOPS logs, and NCMEC data (collectively, the "reports"), because they were impermissible hearsay and violated his rights under the Sixth Amendment Confrontation Clause.  Second, Bates argues that the district court erred when it allowed the prosecutor to make improper remarks calling him a "big fish," the "worst user," and the "worst offender," and to characterize his entire

defense as a "smokescreen." Bates says these remarks violated his Sixth Amendment right to a fair trial. He also seeks to have this Court consider the cumulative effect of these two alleged errors in determining whether he should receive a new trial.

We review de novo whether hearsay statements are testimonial for purposes of the Confrontation Clause and review decisions about the admissibility of evidence for abuse of discretion. United States v. Underwood, 446 F.3d 1340, 1345 (11th Cir. 2006). We also review de novo a claim of prosecutorial misconduct. United States v. Merrill, 513 F.3d 1293, 1306 (11th Cir. 2008).

A.

First, we turn to Bates's argument that the reports were impermissible hearsay and admitted into evidence in violation of his rights under the Sixth Amendment Confrontation Clause. The Confrontation Clause says that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Impermissible hearsay can implicate the Confrontation Clause. See United States v. Jiminez, 564 F.3d 1280, 1286 (11th Cir. 2009). Hearsay is a statement that a declarant does not make while testifying at the trial or hearing, and is offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Written assertions can constitute hearsay. Id. 801(a).

The district court found that the reports, as "record[s] of regularly conducted activity," were exceptions to the general prohibition against using hearsay as evidence. Id. 803(6). Generally, mechanically generated records don't qualify as "statements" for hearsay purposes, but when those records are developed with human input, they can become hearsay statements. See United States v. Lamons, 532 F.3d 1251, 1261–64 (11th Cir. 2008); see also Melendez-Diaz v. Massachusetts, 557 U.S. 305, 310–11, 129 S. Ct. 2527, 2531–32 (2009) (affidavit reports of forensic analysis were testimonial and implicated the defendant's Sixth Amendment right to confrontation).

The reports challenged here required human input. While the reports largely contained computer-generated tracking information like dates, times, and online identifiers that do not qualify as "statements" for hearsay purposes, the data that matched Bates's downloaded files to known child pornography relied on input from law enforcement officers. The CPS and NCMEC data underlying these reports contained information from officers about the children in the files, as well as the officers' opinion about whether the files were known child pornography.

These reports and their underlying data were also testimonial, implicating the Confrontation Clause. Testimonial statements include those "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Crawford v. Washington, 541

7

U.S. 36, 52, 124 S. Ct. 1354, 1364 (2004) (quotation omitted).  The record shows that the government used the reports to demonstrate the steps of Sgt. Valentine's investigation and to prove that the files Bates downloaded were child pornography. The reports and their underlying data were thus impermissible hearsay as well as testimonial, and therefore their admission into evidence violated the Confrontation Clause.  The district court abused its discretion in admitting them at trial.

Although these records were erroneously admitted into evidence, the error was harmless.   An evidentiary error is harmless if it does not substantially influence the outcome of the trial and the jury's verdict was supported by sufficient, untainted evidence.  United States v. Dickerson, 248 F.3d 1036, 1048 (11th Cir. 2001).   "For violations of the Confrontation Clause, harmless error occurs where it is clear beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."  United States v. Caraballo, 595 F.3d 1214, 1229 n.1 (11th Cir. 2010) (quotation omitted).

There was sufficient untainted evidence that established Bates's guilt beyond a reasonable doubt.  Bates admitted to unintentionally downloading child pornography when he was first interviewed, saying he had deleted it, despite forensic evidence to the contrary.  The police searched four computers, but only found child pornography on Bates's personal laptop.  Bates and his wife told officers the laptop was Bates's personal computer, and other forensic evidence

supported that conclusion as well.  The laptop contained Bates's work-related materials, family pictures, and personal sexually explicit photographs.  The laptop reflected no computer activity attributable to other users.

Bates relies on United States v. Cameron, 699 F.3d 621 (1st Cir. 2012), to argue that admitting the reports into evidence was not harmless.  But unlike Cameron, the reports here were not "the only evidence that was introduced" to prove the government's charges.  See id. at 653.  Given the amount of untainted evidence supporting Bates's guilt, the error in admitting the hearsay reports was harmless.

### B.

Bates also argues that the prosecutor's references to him as a "big fish," the "worst user," and the "worst offender," as well as characterizing his entire defense as a "smokescreen" produced a wrongful conviction by misleading the jury.  Prosecutorial misconduct is established by showing that: (1) the prosecutor's remarks were improper; and (2) the improper remarks prejudiced the substantial rights of the defendant.  Merrill, 513 F.3d at 1307 (citation omitted).  Prosecutors must refrain from improper methods or assertions calculated to produce a wrongful conviction or mislead the jury.  United States v. Blakey, 14 F.3d 1557, 1560 (11th Cir. 1994).  A defendant's substantial rights are prejudiced only when a reasonable probability arises that the outcome of the trial would have been different without

the remarks.  This means that "where there is sufficient independent evidence of guilt, any error is harmless."  Merrill, 513 F.3d at 1307 (quotation omitted).  While some of the government's remarks were improper, they were ultimately harmless due to the independent evidence of Bates's guilt.

First, characterizing Bates's defense as a "smokescreen" was not improper. There is no prohibition against "colorful and perhaps flamboyant remarks" that relate to evidence at trial in presenting one side's argument.  United States v. Bailey, 123 F.3d 1381, 1400 (11th Cir. 1997) (quotation omitted).  Also, Bates brought up the government's use of the term "smokescreen" in his closing argument, so the government's response to this discussion in its own closing argument was neither surprising nor improper.  Because Bates referred to the comments, the government could respond to Bates's "invitation" without committing an act that was calculated to incite the passions of the jury.  See Knight v. Dugger, 863 F.2d 705, 741 (11th Cir. 1988).

Second, although the prosecutor's other remarks were improper, they did not prejudice Bates's Sixth Amendment right to a fair trial.  The use of the terms "big fish," the "worst user," and the "worst offender," was improper both when the prosecutor and Sgt. Valentine used them.  In fact, Bates was clearly not the "worst offender."  The evidence presented by the government showed that Bates had 110 child pornography files on his computer.  As Bates has shown, there are sadly

many cases where defendants have downloaded many thousands of child pornography files.  See, e.g., United States v. Beasley, 562 F. App'x 745 (11th Cir. 2014) (defendant downloaded and shared over 40,000 files); United States v. McGarity, 669 F.3d 1218 (11th Cir. 2012) (defendant was part of an international child pornography ring that shared over 400,000 images and over 1,000 videos in roughly a one-year span).[2]  These remarks were not merely "colorful," but instead were capable of misleading the jury.[3]

Nevertheless, the improper remarks did not violate Bates's Sixth Amendment right to a fair trial because his substantial rights were not affected.  To justify reversal, the misconduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." United States v. Woods, 684 F.3d 1045, 1065 (11th Cir. 2012) (per curiam) (quotation omitted).  We judge the propriety of prosecutorial comments in the context of the entire record.  United States v. Smith, 918 F.2d 1551, 1562 (11th Cir. 1990).  The government's remarks here were wrong, but they were few and far between.  The jury heard these phrases fewer than ten times altogether, in the context of a four-day trial.  The district court

---

[2] The government notes that there are also many cases involving defendants who downloaded far fewer files.  While this may be true, the existence of cases with fewer files does not elevate Bates to the "worst" user or offender.

[3] The government points out that Sgt. Valentine, on cross-examination, provided some context for these remarks by clarifying that Bates was only the "worst offender" or a "big fish" relative to other investigatory targets he had at the time based on the ICAC database.  But we note that the clarification only came at the insistence of Bates's counsel and, despite the clarification, the government continued to use these improper characterizations in its closing argument.

11

also instructed the jury that statements by the lawyers was not evidence.  On this record (including the substantial untainted evidence), we cannot say that the misconduct was persistent enough to have permeated the entire atmosphere of the trial, and find the error harmless.  See Merrill, 513 F.3d at 1307.

## C.

Finally, Bates asks us to consider whether the cumulative effect of these two errors warrants vacating his convictions.  The cumulative error doctrine "provides that an aggregation of non-reversible errors," such as harmless errors, can as a whole affect whether a defendant received a fundamentally fair trial.  Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012) (quotation omitted).  But in light of the substantial untainted evidence against Bates we've detailed above, we hold that the combination of these two errors was harmless.  See United States v. Hesser, 800 F.3d 1310, 1329–30 (11th Cir. 2015) (per curiam).  As a result, we affirm.

**AFFIRMED.**